IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TIMOTHY SHANAHAN and PATRICIA SHANAHAN, <br><br> *Plaintiffs*, <br><br> v. <br><br> ANDREW SAUL, Commissioner of Social Security, <br><br> *Defendant*. | No. 20 C 2190 <br><br> Judge Virginia M. Kendall |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Timothy and Patricia Shanahan seek review of an Administrative Law Judge's ("ALJ") denial of Timothy Shanahan's application for disability benefits under the Social Security Act. (Dkt. 11). They argue the ALJ erred in determining Mr. Shanahan's residual functional capacity and ability to perform past relevant work. Before the Court is Defendant Commissioner's motion for summary judgment requesting the Court to affirm the ALJ's decision. (Dkt. 12). For the following reasons, the Court denies the Commissioner's motion, vacates the Commissioner's judgment, and remands the case to the Social Security Administration for further proceedings consistent with this opinion.

**BACKGROUND**

**I.  Procedural History**

On September 30, 2016, Timothy Shanahan applied for disability benefits with the Social Security Administration claiming disability due to lower back pain, "hand problems," carpel tunnel syndrome, and hernia beginning on October 15, 2014. (Dkt. 10 at R. 173–74, 193). Shanahan's

1

"date last insured"—the date by which he must have proven disability in order to be eligible for benefits—was December 31, 2015. (*Id*. at R. 189). In January and March 2017, the Social Security Administration denied Shanahan's application on initial review and reconsideration, explaining that the record contained no evidence of disability prior to December 31, 2015. (*Id*. at R. 81, 90). Shanahan requested a hearing before an ALJ, which took place on July 16, 2018. (*Id.* at R. 32–77). On November 2, 2018, the ALJ issued a decision denying Shanahan's application. (*Id.* at R. 19–26). On October 9, 2019 the Social Security Appeals Council denied Shanahan's request for review and upheld the ALJ's decision. (*Id*. at R. 1–3). [1] Shanahan subsequently filed the present action seeking this Court's review. (Dkt. 1).

## II. Relevant Medical History

The entirety of the medical record before the Court is from after Shanahan's date last insured, December 31, 2015. Shanahan represented he did not receive medical treatment in 2014 and 2015. (Dkt. 10 at R. 81). On February 22, 2016, Shanahan underwent endoscopy and colonoscopy procedures to address issues regarding his longstanding gastroesophageal reflux disease and history of colon polyps. (*Id*. at R. 301–03, 310-18). Doctors removed multiple polyps during the procedures, diagnosed him with gastritis and hemorrhoids, and advised him to continue treatment with medication. (*Id*. at R. 311, 314). In August 2016, Shanahan visited his primary care provider, Dr. Shervin Derodi and complained of back pain. (*Id*. at R. 332-33). Dr. Derodi noted that Shanhan had two back surgeries in 1991 and 1993, in addition to a surgery for his carpel tunnel syndrome in 2013 and an ankle surgery. (*Id.*) Dr. Derodi diagnosed Shanahan with back pain and inguinal hernia and ordered imaging to address these issues. (*Id.*)  On September 6, 2016,

---

[1] On or around this date, Timothy Shanahan passed away due to gastrointestinal bleeding. (Dkt. 11 at fn 1). His wife, Patricia Shanahan, subsequently became the substitute party in the proceedings before the Social Security Administration. (*Id.*)

radiographic imaging of Shanahan's back revealed surgical changes at L4–S1 and degenerative disc changes at L2–L3. (*Id*. at R. 433). On September 9, 2016, Dr. Joubin Khorsand affirmed the diagnosis of inguinal hernia and performed a hernia repair surgery on October 7, 2016. (*Id*. at R. 289–90, 292–93). Through a series of follow up appointments, Dr. Khorsand confirmed the surgery had been successful. (*Id*. at R. 283–87).

On September 23, 2016, Shanahan saw Dr. Mehul Sekhadia at Advocate Lutheran General Hospital for his back pain. (*Id*. at R. 409-419). Shanahan reported continuous stabbing and shooting pain in his back that he ranked at 10/10 in intensity. (*Id.* at R. 409-10). He also reported weakness in his legs. (*Id*. at R. 409). Dr. Sekhadia diagnosed him with sacroiliitis [2] and gave him bilateral sacroiliac joint injections. (*Id*. at R. 411-19). He also noted a positive FABER test [3] and limited range of motion in Shanahan's lumbar spine. (*Id*. at R. 411). On November 3, 2016, an MRI of Shanahan's lumbar spine indicated moderate degenerative disc disease at T-12–L1 and severe degenerative disc disease and mild stenosis at L2-L3. (*Id*. at R. 341-42). On November 22, 2016, Shanahan saw an orthopedic specialist who opined:

> His [Shanahan's] symptoms are back pain with no real radiation of pain and his physical exam reveals a well-healed scar on his back [from previous surgery] with negative straight leg raising and some complaints of pain with range of motion testing. An MRI scan and standing x-rays do not reveal any substantial degenerative changes adjacent to his previous fusion [surgery]. It is my opinion his symptoms are largely arthritic.

(*Id*. at R. 343). The specialist prescribed medication for Shanahan's symptoms and "recommended that he continue [to] pursue his social security disability claim". (*Id*.)

---

[2] Sacroiliitis is the inflammation of the sacroiliac joints connecting the lower spine and pelvis. *See* https://www.mayoclinic.org/diseases-conditions/sacroiliitis/symptoms-causes/syc-20350747#:~:text=Sacroiliitis%20(say%2Dkroe%2Dil,climbing%20can%20worsen%20the%20pain.

[3] A FABER test is a diagnostic tool used to measure range of motion in the hips, lumbar spine, and sacroiliac regions. A positive FABER test is indicative of limited range of motion. *See* https://www.physio-pedia.com/FABER_Test#:~:text=The%20FABER%20test%20is%20used,dysfunction%2C%20or%20an%20iliopsoas%20spasm.

3

Medical records from 2017 and 2018 continue to indicate a diagnosis of intervertebral disc disease, as well as hypertension and benign prostatic hyperplasia. (*Id*.at R. 364–87). In March 2018, Shanahan visited Dr. Derodi and complained of bilateral hip pain. (*Id*. at R. 366). Imaging of Shanahan's hips revealed "[v]ery mild degenerative changes." (*Id*. at R. 434). In May 2018, Shanahan saw Dr. Simon Adanin at the Interventional Pain Management Center at Advocate Lutheran General Hospital. (*Id*. at R. 420-27). Shanahan reported constant and severe pain in his back, hips, and legs. (*Id*. at R. 420). Dr. Adanin opined, "Shanahan is experiencing back and bilateral lower extremity pain likely as a result of chronic lumbar radiculopathy, failed back syndrome of the lumbar spine, lumbar degenerative disk disease. He also has left hip osteoarthritis and insomnia." (*Id*. at R. 425). He recommended physical therapy and a CT scan of the lumbar spine due to the inefficacy of previous conservative treatment and surgical intervention. (*Id*. at R. 426).

### III. Relevant Work History

From 1988 to 2013, Shanahan worked as a sheet metal installer for a roofing company. (Dkt. 10 at R. 194, 212). As part of this position, Shanahan claimed he had to climb ladders, work off of scaffolds and lifts, and frequently lift 50 pounds or more. (*Id*. at R. 212-13). He further alleged the job required walking, climbing, stooping, kneeling, crouching, and handling or grasping large objects. (*Id*.)

### IV. Hearing Testimony

At the July 16, 2018 hearing before the ALJ, Shanahan testified regarding the pain in his lower back, hips, and legs. (Dkt. 10 at R. 46). Shanahan stated he can walk only about a block before he is "in so much pain [his] legs give out" and can stand for about 15 to 20 minutes at a time. (*Id*. at R. 46, 60). He further testified that his "back hurts all the time," including when sitting

and that he "lose[s] feeling in [his] hands a lot." (*Id*. at R. 60–61). Shanahan takes medication for his pain which helps "somewhat" but not completely. (*Id*. at R. 46-47).

In addition to Shanahan, medical and vocational experts also testified at the hearing. Medical expert, Dr. Sai Nimmagadda, endorsed diagnoses of degenerative disc disease, bilateral carpel tunnel syndrome, and inguinal hernial repair based on the medical record. (*Id*. at R. 50). Based on his review of the medical records, Dr. Nimmagadda concluded Shanahan did not meet the requirements of any disability listings in 20 CFR 404 and placed Shanahan's residual functional capacity "at a medium exertional function capacity" as of December 31, 2015. (*Id*. at R. 50-51). He testified that he would not place any postural limitations on Shanahan other than limiting stooping and bending to frequent, and imposed weight limits of 50 pounds occasionally and 25 pounds frequently. (*Id*. at R. 53–54).

On the day of the hearing, Shanahan presented the Court with medical records from Shanahan's visits to Advocate Lutheran General Hospital in 2016 and 2018 that were not reviewed by Dr. Nimmagadda. (*Id*. at R. 54–55). Shanahan's attorney requested Dr. Nimmagadda review the new records during the hearing to see if they might alter his conclusions. (*Id*. at R. 55). The ALJ interjected, however, that he had already "look[ed] at the records" and "didn't find anything earthshaking in them…." (*Id*.) Consequently, Dr. Nimmagadda did not review the novel evidence. (*Id*. at R. 56).

Next, vocational expert Linda Gels classified Shanahan's sheet metal installation job as requiring medium strength based on the Dictionary of Occupational Titles' ("DOT") description of a "sheet metal worker." DOT 804.281-010. (*Id*. at R. 63). Gels stated that per DOT descriptions, the job would not require more than frequent climbing, balancing, stooping, kneeling, crouching, and other similar postural movements. (*Id*. at R. 74).

5

## V. The ALJ's Findings

To determine whether a claimant is disabled and thus ineligible for disability insurance benefits, an ALJ uses a sequential five-step inquiry. *See* 20 C.F.R. § 416.920(a)(4); *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). The inquiry asks: (1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment whether he can perform his past relevant work, in light of his residual functional capacity ("RFC"); and (5) if the claimant cannot perform his past relevant work, whether he is capable of performing any work in the national economy. *Kastner*, 697 F.3d at 646. Here, the ALJ found Shanahan had not engaged in substantially gainful employment since October 15, 2014 and that Shanahan had the following severe impairments during the relevant period: status post L4–S fusion, L2–L3 and T12–L1 degenerative disc disease, arthritis of the bilateral hips, and status post hernia repair. (Dkt. 10 at R. 22). He also determined Shanahan had several non-severe medical impairments, including hypertension, bilateral carpal tunnel syndrome, and prostatic hyperplasia. (*Id*.) The ALJ did not, however, find Shanahan's impairments conclusively disabling at step three. (*Id*. at R. 22-23). At step four, the ALJ determined Shanahan "had the residual functional capacity to perform medium work … except frequently balance, climb ladders/ropes/scaffolds/stairs/ramps, stoop, crouch, kneel, and crawl," and consequently found Shanahan capable of performing his past relevant work as a sheet metal worker. (*Id*. at R. 23, 26). The ALJ dismissed Shanahan's subjective statements regarding his pain, on the basis that Shanahan's "statements concerning the intensity, persistence, and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record …." (*Id*. at R. 24).

## **LEGAL STANDARD**

Because the Appeals Council denied review, this Court evaluates the ALJ's decision as "the final word of the Commissioner of Social Security." *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018), *as amended on reh'g* (Apr. 13, 2018). A reviewing court will affirm the Commissioner's final decision where it is supported by "substantial evidence" and the ALJ applied the correct legal standard. *Bates v. Colvin*, 736 F.3d 1093, 1097-98 (7th Cir. 2013) (citing 42 U.S.C. § 405(g)). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses." *Id.* at 836-37. The ALJ's decision, however, must rest on "adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). The ALJ must "build a logical bridge from the evidence to his conclusion…." *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012) (quotations and citation omitted). If the ALJ's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review," remand is required. *Kastner*, 697 F.3d at 646 (quotations and citation omitted).

## **DISCUSSION**

Shanahan challenges the ALJ's step four findings regarding his residual functional capacity and ability to perform past relevant work. Specifically, he argues the ALJ erred by (1) failing to consider the effects of non-severe impairments on his RFC, (2) dismissing his subjective testimony

regarding his limitations, (3) relying too heavily on unreliable medical expert testimony, and (4) relying on an inaccurate DOT classification.

### I. Residual Functional Capacity

A claimant's RFC represents the maximum he can do in a work setting despite his mental and physical limitations. 20 C.F.R. § 404.1545(a). An RFC determination must account for the combined effects of all impairments, including those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). The ALJ must follow a two-step process in considering a claimant's symptoms. First, he must determine whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or symptoms. *See Nicholson v. Astrue*, 341 F. App'x 248, 251 (7th Cir. 2009). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. See 20 C.F.R. § 404.1529(c).

<u>Consideration of Non-Severe Impairments</u>

In Shanahan's case, the ALJ failed to consider the effects of Shanahan's hypertension, bilateral carpel tunnel syndrome, and prostatic hyperplasia on his RFC. Although the ALJ previously found that these impairments were not severe, he remained obligated to consider their effects in his separate assessment of Shanahan's RFC. See § 404.1545(a)(2). The ALJ's opinion is also devoid of mention, let alone consideration, of other medical conditions evidenced in the record, such as Shanahan's gastroesophageal reflux disease and history of colon polyps for which Shanahan required endoscopy and colonoscopy procedures in February 2016, mere months after his date last insured. (Dkt. 10 at R. 301–03; 310-18). The ALJ's boilerplate explanation that he "has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" is not enough. (*Id*. at R. 23).

Shanahan raised these conditions to the ALJ and produced medical evidence to support the diagnoses, so they required consideration. *See Spicher v. Berryhill*, 898 F.3d 754, 759 (7th Cir. 2018). Moreover, the ALJ precluded himself from review of the combined effects of Shanahan's impairments by not considering the effects of many in the first place. This, too, was error. See § 423(d)(2)(B).

<u>Shanahan's Credibility</u>

In evaluating Shanahan's RFC, the ALJ dismissed Shanahan's subjective statements regarding the intensity, persistence, and limiting effects of his symptoms on grounds that the statements "are not entirely consistent with the medical evidence and other evidence in the record…." (Dkt. 10 at R. 24). An ALJ's credibility determination is reviewed with deference and is reversed "only if it is so lacking in explanation or support that" it is "patently wrong." *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009) (quotations and citation omitted). The ALJ must nevertheless "articulate specific reasons for discounting a claimant's testimony" and cannot "rely[] solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding." *Schmidt v. Barnhart*, 395 F.3d 737, 746–47 (7th Cir. 2005); *se e also Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006) ("[T]he administrative law judge cannot disbelieve her testimony solely because it seems in excess of the 'objective' medical testimony."). 20 C.F.R. § 404.1529 requires the ALJ to consider multiple sources of evidence in making a credibility determination, including the claimant's daily activities and the efficacy of medications in relieving the claimant's pain.

At the outset, the ALJ relied only on medical evidence and medical expert testimony to support his adverse credibility determination and failed to consider other factors such as Shanahan's daily activities or the efficacy of the pain medication he takes. (Dkt. 10 at R. 24-25).

9

Furthermore, the ALJ afforded "significant weight" to the hearing testimony of medical expert Dr. Sai Nimmagadda, but Dr. Nimmagadda's conclusions are based on an incomplete review of the medical records. After unilaterally determining that some of records had nothing "earthshaking" in them, the ALJ did not allow Dr. Nimmagadda to review them. (*Id*. at R. 55). Significantly, the unreviewed documents include medical records from 2016 evidencing Shanahan's sacroiliitis and the need for bilateral sacroiliac injections that is not evidenced elsewhere in the record. (*Id*. at R. 411-19). During this 2016 visit, the diagnosing physician also noted a positive FABER test and limited range of motion in Shanahan's lumbar spine. (*Id*. at R. 411). The ALJ precluded Dr. Nimmagadda from determining whether this diagnosis and treatment, along with other information reflected in the unreviewed records, would have altered his conclusion that Shanahan had a medium exertional functional capacity. The Court must discount the ALJ's heavy reliance on Dr. Nimmagadda's testimony for that reason. Given the "significant weight" placed on Dr. Nimmagadda's hampered testimony and the ALJ's sole reliance on medical evidence, the Court concludes the ALJ's adverse credibility and RFC determinations were unsupported by substantial evidence.

The Court does not, however, discredit the ALJ's analysis of the medical evidence itself. While Shanahan claims the ALJ neglected to mention certain evidence and testimony in his discussion, (*see* Dkt. 11 at 9-10), an ALJ "need not mention every strand of evidence in h[is] decision but only enough to build an accurate and logical bridge from evidence to conclusion." *Simila*, 573 F.3d at 517 (quotations and citations omitted). Here, the ALJ clearly explained why the medical records cited tend to undermine Shanahan's subjective accounts of pain. Shanahan also faults the ALJ for giving greater weight to benign clinical findings from September 2016 than to more serious findings in later years. He argues: "As all of the evidence reflects examination and

testing subsequent to the date last insured, it makes no sense that a single anomalous finding would carry more weight than the rest of the findings, which are more dire." (Dkt. 11 at 11). First, it is not clear that the September 2016 findings are "anomalous," as findings from even November 2016 indicate less severity in Shanahan's condition than Shanahan claims. (*See* Dkt. 10 at R. 343). Second, and more importantly, the ALJ's decision to place greater weight on evidence closer to the date last insured is reasonable, as medical records closer in time to that date would tend to better represent Shanahan's physical condition during the relevant time period. Shanahan had the burden to produce medical evidence and prove a disability prior to December 31, 2015. By failing to produce medical records prior to that date, he "bears the risk of uncertainty, even if the reason for the sparse record is" a lack of treatment. *Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008).

## II. Ability to Perform Past Relevant Work

Finally, Shanahan argues the ALJ erred in accepting the vocational expert's classification of Shanahan's sheet metal installation job under DOT 804.281-010. Shanahan maintains this classification is an inaccurate description of his job because he testified his job required him to work on a roof, and DOT 804.281-010 does not include that requirement. As the vocational expert testified, however, the alternative DOT classification for sheet metal worker is "metal roofer." (Dkt. 10 at R. 72). Notably, the DOT description for a regular "roofer," DOT 866.381-010, explicitly excludes sheet metal installation (*id*. at R. 74), leaving DOT 804.281-010 as a reasonably applicable DOT classification to Shanahan's past relevant work. The ALJ did not err in using DOT 804.281-010 as a description of Shanahan's past relevant work.

## **CONCLUSION**

For the foregoing reasons, the Court denies the Commissioner's motion for summary judgment [12], vacates the Commissioner's judgment, and remands the case to the Social Security Administration for further proceedings consistent with this opinion.

_____
Virginia M. Kendall
United States District Judge

Date: February 16, 2021